1
2
3
4
5
6
7
8

9            **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11   EVERETT L. THOMAS; MARTHA            CASE NO. 3:15-cv-02344-GPC-JMA
     A. THOMAS,
12                                        **ORDER GRANTING IN PART AND**
                              Plaintiffs, **DENYING IN PART DEFENDANT**
13                                        **WELLS FARGO BANK, N.A.'s**
             v.                           **SECOND MOTION TO DISMISS**
14
                                          [ECF No. 18]
15   WELLS FARGO BANK, N.A.;
     WELLS FARGO BANK HOME
16   MORTGAGE; BARRETT DAFFIN
     FRAPPIER & WEISS, LLP;
17   SOUTHLAND HOME MORTGAGE
     II, LLC; and DOES 1 through 10,
18   INCLUSIVE,

19                           Defendants.

20
           Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Defendant" or "Wells
21
     Fargo") Second Motion to Dismiss. Def. Mot., ECF No. 18. The motion has been fully
22
     briefed. Pl. Opp., ECF No. 21; Def. Reply, ECF No. 22. Upon consideration of the
23
     moving papers and the applicable law, and for the reasons set forth below, the Court
24
     **GRANTS IN PART** and **DENIES IN PART** Defendant's Second Motion to Dismiss
25
     with prejudice.
26
                    **FACTUAL AND PROCEDURAL BACKGROUND**
27
           This case arises out of a $695,000 loan obtained by Plaintiffs in June 2007
28
     from Defendant's predecessor-in-interest, World Savings Bank, FSB ("WSB"),

which was secured by a deed of trust on Plaintiffs' home. Am. Compl. 5, ECF No. 16. In 2009, Plaintiffs obtained a modification on this loan that reduced the principal balance from $724,920.30 to $579,936.24. Am. Compl. 5. Plaintiffs allege that in October 2013, Plaintiffs sought a new loan modification, and that a Wells Fargo representative told them that they needed to "stop paying" their mortgage in order to be eligible to obtain a new loan modification. Am. Compl. 7. Plaintiffs subsequently defaulted on their loan, and then provided Defendant with a "completed Loan Modification request" on or around January 14, 2014. *Id.* On November 12, 2014, the trustee under the deed of trust, Defendant Barrett Daffin Frappier Treder & Weiss, LLP ("Barrett"), recorded a notice of default. Def. Request for Judicial Notice ("RJN") Ex. A, ECF No. 18-2. Plaintiffs did not cure their default, and on June 12, 2015, Barrett recorded a notice of trustee sale, which scheduled a foreclosure sale for July 9, 2015. RJN Ex. B.

Plaintiff Everett L. Thomas filed for Chapter 7 Bankruptcy on July 7, 2015. RJN Ex. C. This bankruptcy was dismissed without prejudice on July 28, 2015. *Id.* On September 9, 2015, Plaintiffs allegedly submitted another "completed loan modification package" to Defendant. Am. Compl. 8. Wells Fargo allegedly acknowledged receipt of the loan modification application. *Id.* at 9. On November 6, 2016, Defendant sold Plaintiffs' home to Defendant Southland Mortgage II ("Southland"), LLC. Am. Compl. 10.

Plaintiffs allege that Defendant Wells Fargo violated federal law by (1) not promptly reviewing their September 9, 2015 loss mitigation application to determine whether it was complete and not notifying them within five days whether the application is complete in violation of 12 C.F.R. § 1024.41(b); (2) not evaluating Plaintiffs for all loss mitigation options available and providing written notice to the borrower stating which loss mitigation options, if any, it would offer to Plaintiffs within thirty days of receipt of their September 9, 2015 loss mitigation application in violation of 12 C.F.R. § 1024.41(c); and (3) colluding with Defendant Southland

1  by advertising the foreclosed-upon property with an opening bid above the

2  property's market value in order to discourage other prospective buyers and allow

3  Defendant Southland to purchase the property at a lower price in violation of the

4  Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et*

5  *seq.* Am. Compl. 10–16.

6  **PROCEDURAL BACKGROUND**

7  On September 1, 2015, Plaintiffs, residents of California, brought suit against

8  Defendant, a national banking association with its main office located in South

9  Dakota, in San Diego Superior Court. Notice of Removal 2–5, ECF No. 1. Plaintiffs

10  alleged violations of (1) Cal. Civ. Code § 2923.7 and (2) Cal. Civ. Code § 2923.6,

11  and (3) common law breach of contract. *Id.* at 6–9.

12  On October 16, 2015, Defendant removed the case to federal court on the

13  basis of diversity jurisdiction. Notice of Removal 2. On November 16, 2015,

14  Plaintiffs filed an ex parte motion for a temporary restraining order ("TRO") to

15  restrain Defendant from selling Plaintiffs' home through a nonjudicial foreclosure

16  sale, on the basis that such sale would be in violation of a September 9, 2015

17  temporary restraining order restraining the sale issued by the San Diego Superior

18  Court. TRO Mot. 2–3, ECF No. 6. Defendant conceded that Plaintiffs' home had

19  been sold on November 6, 2015, but argued that the sale was proper because the

20  TRO had expired no later than 14 days after the case was removed pursuant to Fed.

21  R. Civ. P. Rule 65(b)(2), and Plaintiff had not renewed it. TRO Opp. 3–5. At the

22  November 20, 2015 hearing on Plaintiffs' TRO motion, the Court denied the

23  motion, finding that the state court TRO was no longer in effect. ECF No. 11.

24  On January 14, 2016, the Court granted Defendant's first motion to dismiss.

25  ECF No. 15. The Court found that Plaintiffs' state-law claims were preempted by

26  the federal Home Owners' Loan Act. *Id.* at 9. The Court granted Plaintiffs leave to

27  amend in order to add a RICO claim to their suit. *Id.* at 10.

28  Plaintiffs filed their amended complaint on February 10, 2016. Am. Compl.

1    This second motion to dismiss followed.

2                            **LEGAL STANDARD**

3         A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable

4    legal theory' or 'the absence of sufficient facts alleged under a cognizable legal

5    theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121–22 (9th

6    Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

7    1990)).

8         "To survive a motion to dismiss, a complaint must contain sufficient factual

9    matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

10   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

11   550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

12   factual content that allows the court to draw the reasonable inference that the

13   defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Twombly*, 550 U.S.

14   at 556). "Threadbare recitals of the elements of a cause of action, supported by mere

15   conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at

16   555 (noting that on a motion to dismiss the court is"not bound to accept as true a

17   legal conclusion couched as a factual allegation."). "The pleading standard . . . does

18   not require 'detailed factual allegations,' but it demands more than an unadorned,

19   the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations

20   omitted). "Review is limited to the complaint, materials incorporated into the

21   complaint by reference, and matters of which the court may take judicial notice."

22   *See Metlzer Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir.

23   2008).

24        In analyzing a pleading, the Court sets conclusory factual allegations aside,

25   accepts all non-conclusory factual allegations as true, and determines whether those

26   nonconclusory factual allegations accepted as true state a claim for relief that is

27   plausible on its face. *Iqbal*, 556 U.S. at 676–84; *Turner v. City & Cty. of San*

28   *Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (noting that "conclusory allegations

of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (internal quotation marks and citation omitted). And while "[t]he plausibility standard is not akin to a probability requirement," it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). In determining plausibility, the Court is permitted "to draw on its judicial experience and common sense." *Id.* at 679.

**DISCUSSION**

**I.    Judicial Notice**

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Fed.  R. Evid. 201(b) permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take notice of such facts on its own, and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

Defendant seeks judicial notice of: (a) a notice of default issued by the trustee of the deed of trust, Defendant Barrett, dated November 7, 2014 and recorded in the official records of the San Diego County Recorder's Office on November 12, 2014; (b) a notice of trustee's sale issued by Defendant Barrett, dated June 11, 2015 and recorded in the official records of the San Diego County Recorder's Office on June 12, 2015; (c) the docket for the bankruptcy petition filed by Plaintiff Everett L. Thomas in the United States Bankruptcy Court for the Southern District of

California on July 7, 2015; and (d) the state court complaint filed by Plaintiffs. *See* RJN Exs. A–D.

Neither party questions the authenticity of these documents. The Court finds that these items are appropriate for judicial notice because they are matters of public record, the parties do not dispute their authenticity, and they are central to Plaintiff's claims. *See, e.g.*, *Gamboa v. Trustee Corps & Cent. Mortgage Loan Servicing Co.*, 2009 U.S. Dist. LEXIS 19613, at \*4–\*10 (N.D. Cal. Mar. 12, 2009) (judicial notice of recorded documents related to the foreclosure sale, including grant deed and deed of trust). Therefore, the Court **GRANTS** Defendant's requests for judicial notice.[1]

## II.   Motion to Dismiss

### A.   12 C.F.R. §§ 1024.41(b) & (c)

12 C.F.R. § 1024.41, also known as "Regulation X," became effective on January 10, 2014 and specifies loss mitigation procedures that a borrower may enforce against a loan servicer pursuant to section 6(f) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. 2605(f). Plaintiffs claim that Defendant violated subsections (b) and (c) of this section, which govern procedures concerning the receipt and evaluation of loss mitigation applications respectively. Am. Compl. 10–13. Defendant makes three arguments as to why Regulation X does not apply in the instant case, none of which the Court finds persuasive.

First, Defendant argues that Regulation X does not apply because of Plaintiffs' repeated loan modification requests. § 1024.41(i) states:

> (i) Duplicative requests. A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account."

Defendant argues that Plaintiffs have made two "complete loss mitigation applications" since Regulation X came into effect: a "completed Loan Modification

---

[1] The Court also takes judicial notice that the bankruptcy docket proffered by Defendant is incomplete, because it does not include the latest entry on September 16, 2015, which closed the case. *See* Bankruptcy Petition #15-04528-MM7, U.S. Bankruptcy Court for the Southern District of California, ECF No. 24.

request" on or around January 14, 2014, Am. Compl. 7, and the "completed loan modification package" provided on September 9, 2015, Am. Compl. 8. Def. Mot. 4.[2]

Plaintiffs respond that "each time Plaintiff tendered a Loan Modification they believed they were complete [sic], but Defendant ultimately placed Plaintiffs' [sic] back on the Loan Modification roller coaster by requesting more documents, or simply denying the request without explanation." Pl. Opp. 3. In the amended complaint, Plaintiffs state that they submitted a "completed Loan Modification request" on January 14, 2014, Am. Compl. 7, but that "[b]ecause Defendant failed to assign a single point of contact, Plaintiff's [sic] were never able to determine the current status of their loan modification request, and were never able to determine exactly what information Defendant required to conclude a Loan Modification, and were never provided with accurate and/or consistent information regarding the status of the modification or the status of the now pending nonjudicial foreclosure," *id.* at 8. Plaintiffs then allege that "[o]n September 9, 2016 [sic] Plaintiffs provided Defendant Wells Fargo with a renewed and COMPLETED LOAN MODIFICATION PACKAGE pursuant to the specific request of the Defendants." *Id.* Defendant then "acknowledged receipt of the LOAN MODIFICATION PACKAGE submitted by the Plaintiffs."

Defendant seeks to hoist Plaintiffs upon the petard of having characterized their January 14, 2014 loan modification "request" as "complete." But the Court observes that the amended complaint appears to distinguish between the "complete . . . request" of January 14, 2014 and the "COMPLETED . . . PACKAGE" of September 9, 2015, that § 1024.41(b) requires a servicer to exercise reasonable

---

[2] Defendant also argues that Plaintiffs submitted an additional "completed Loan Modification Package" on July 30, 2015, as referenced in the original state court complaint, RJN Ex. D, at 19. However, Defendant cannot rely on the purported July 30, 2015 application, since it was not alleged by Plaintiffs in their amended complaint. While the Court takes judicial notice of the existence of the original state court complaint, the Court granted Plaintiffs leave to amend their complaint. At the motion to dismiss stage, we accept as true the factual allegations in the amended complaint. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993).

diligence in obtaining documents and information to complete a loss mitigation application, and that Plaintiffs allege that Defendants made a "specific request" for the "renewed" loan modification "package" submitted on September 9, 2015. A plausible interpretation of the facts as alleged is thus that Plaintiffs submitted a loan modification application on January 14, 2014, Defendant considered that application incomplete and requested additional information, and upon that information being provided by Plaintiffs on September 9, 2015, Defendant acknowledged receipt of what Defendant then considered a "complete" application. It would be absurd to find that a borrower sending a "renewed" set of materials at the request of a loan servicer renders that borrower's initial loss modification request duplicative, and hence allows the servicer to escape the reach of Regulation X. The Court thus declines to find Plaintiffs' loan modification requests repetitive.

Second, Defendant argues that §§ 1024.41(b) & (c) do not apply due to the timing of the application. In relevant part, § 1024.41(b) states:

> (2) Review of loss mitigation application submission.
> (i) Requirements. If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete.

In relevant part, § 1024.41(c) states:

> (1) Complete loss mitigation application. If a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:
> (i) Evaluate the borrower for all loss mitigation options available to the borrower; and
> (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage.

As alleged by the Plaintiffs, Plaintiffs submitted their complete loan modification package on September 9, 2015, fifty-eight (58) days in advance of the foreclosure sale which took place on November 6, 2015. Am. Compl. 11–12. Defendant argues, however, that the foreclosure sale was originally set for September 10, 2015, the day before Plaintiffs' submission, and that "the plain and common sense meaning of the words in the CFR indicate that time is measured from the date of the submission of an application to the date of the scheduled foreclosure sale at the time the application is submitted." Def. Mot. 5.

Defendant's argument is unpersuasive for two independent reasons. First, Plaintiffs do not allege in the amended complaint that a foreclosure sale was ever scheduled for September 10, 2015. Defendant points again to Plaintiffs' original state court complaint, RJN Ex. D, at 21, but as discussed above, the Court gave Plaintiffs leave to amend the complaint, and at the motion to dismiss stage, we accept as true the factual allegations in the amended complaint. *See Leatherman*, 507 U.S. at 164. Second, even if Plaintiffs had so alleged, Defendant's interpretation of the relevant subsections of § 1024.41 is unconvincing. By their plain terms, § 1024.41(b) applies where a servicer receives a loss mitigation application "45 days or more before a foreclosure sale," and § 1024.41(c) applies where a servicer receives a loss mitigation application "more than 37 days before a foreclosure sale." Neither phrase states "before the date a foreclosure sale is scheduled," "before a scheduled foreclosure sale," or any such similar formulation, and Defendant provides no authority to support the proposition that these phrases should be so interpreted. Thus, the Court construes these two phrases to have their plain meaning: when a servicer receives a loss mitigation application the requisite amount of days before a foreclosure sale occurs, the servicer must comply with the applicable requirements of §§ 1024.41(b) & (c).

Finally, Defendant argues that Defendant did not violate § 1024.41(b), which requires the servicer to "[n]otify the borrower in writing within 5 days (excluding

legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete," because Plaintiffs allege in the amended complaint that "Wells Fargo acknowledged receipt of the Loan Modification Package submitted by the Plaintiffs." Def. Mot. 5–6 (citing Am. Compl. 9). However, Plaintiffs also allege that Wells Fargo either did not do so within the five (5) days required or did not indicate to Plaintiffs whether the application was complete or incomplete. Am. Compl. 11. Thus, the Court finds that Plaintiffs have plausibly alleged that Defendant violated § 1024.41(b).

The Court thus **DENIES** Defendant's motion to dismiss Plaintiffs' 12 C.F.R. §§ 1024.41(b) & (c) claims.[3]

## B.   RICO claim

Defendant argues that Plaintiffs' RICO claim must be dismissed because Plaintiffs fail to allege the "predicate acts" required for racketeering activity. Def. Mot. 6–9. The Court agrees.

In order to state a RICO claim, plaintiffs must allege the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citations omitted). A predicate act is any act indictable under the provisions of 18 U.S.C. § 1961. *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1201 (C.D. Cal. 2008) The Ninth Circuit has held that allegations of predicate acts under RICO must comply with Fed. R. Civ. P. Rule 9(b)'s specificity requirements. *Id.* at 1201–02 (citing *Schreiber Distributing Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393,

---

[3] Defendant also argues that the Court did not give Plaintiffs permission to add the § 1024.41 claims. Def. Mot. The Court's previous Order did not expressly bar Plaintiffs from adding additional claims. *See* ECF No. 15 at 10. Moreover, Fed. R. Civ. P. Rule 15 provides that the Court should freely give leave to amend when justice so requires.

1400–01 (9th Cir. 1986)). In turn, Rule 9(b) requires that plaintiffs allege the time, place, and manner of each act of fraud, the nature of the fraudulent scheme, and the role of each defendant in the scheme. *Id.* at 1202 (citing, among others, *Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir.1991), *cert. denied*, 502 U.S. 1094 (1992); *Rothman v. Vedder Park Management*, 912 F.2d 315, 317 (9th Cir. 1990)).

Plaintiffs allege a number of wrongdoings by Defendants Wells Fargo and Southland.[4] However, Plaintiffs do not allege the specific predicate acts, such as mail fraud or wire fraud, that form the basis of the alleged scheme of racketeering. *See Graf v. Peoples*, No. CV 07–4731–VAP (E), 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008) ("Plaintiff's RICO claims incorporate the Complaint's initial lengthy description of many different asserted acts of wrongdoing by various Defendants. Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates his previous allegations. Such 'shotgun' pleading is insufficient to plead a RICO claim."); *Savage v. Council on American–Islamic Relations, Inc.*, No. C 07–6076 SI, 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (finding that a RICO claim was insufficient where plaintiff set forth a "redundant narrative of allegations and conclusions of law, but [made] no attempt to allege what facts are material to his claims under the RICO statute, or what facts are used to support claims under particular subsections of RICO"); *Federal Reserve Bank of San Francisco v. HK Systems*, No. C–95–1190 MHP, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (finding that a complaint was insufficient for failure to "identify exactly which acts are 'predicate acts' for RICO liability")). The Court thus finds

---

[4] Specifically, Plaintiffs allege that over the last four years, Defendant Southland has purchased hundred of properties in San Diego County from Defendant Wells Fargo. Am. Compl. 14. Plaintiffs allege that Southland is comprised largely of ex-Wells Fargo employees, and that as a result, Defendants share a "special relationship" and inside information. Am. Compl. 13–14. Plaintiffs allege that Southland identifies properties that "will realize a significant equity immediately upon close of the nonjudicial foreclosure sale," whereupon Wells Fargo "fast tracks" a foreclosure sale process where the opening bid is set at higher than the market value of the home. Am. Compl. 15. Plaintiffs allege that these practices discourage other buyers from attending the foreclosure sale, allowing Southland to obtain the property at below market price. Am Compl. 15.

1  that Plaintiffs have failed to adequately identify specific predicate acts as an element

2  to their civil RICO claim, and thereby **GRANTS** Defendant's motion to dismiss

3  Plaintiffs' RICO claim.[5]

4  ### C.   Leave to Amend

5  Fed. R. Civ. P. Rule 15 provides that courts should freely grant leave to

6  amend when justice requires it. Accordingly, when a court dismisses a complaint for

7  failure to state a claim, "leave to amend should be granted unless the court

8  determines that the allegation of other facts consistent with the challenged pleading

9  could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957

10  F.2d 655, 658 (9th Cir. 1992) (internal quotation marks omitted). Amendment may

11  be denied, however, if amendment would be futile. *See id.*

12  Plaintiffs seek leave to amend in order to add a California elder financial

13  abuse claim to their suit. Pl. Opp. 4–5. Under the Elder Abuse and Dependent Adult

14  Civil Protection Act, elder financial abuse occurs when a person or entity "[t]akes,

15  secretes, appropriates, obtains, or retains real or personal property of an elder or

16  dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. &

17  Inst. Code § 15610.30. However, the Court has already previously dismissed

18  Plaintiffs' state law claims based on Cal. Civ. Code § 2923.6, Cal. Civ. Code §

19  2923.7, and breach of contract on the basis that these claims were preempted by the

20  federal Home Owners' Loan Act ("HOLA"). ECF No. 15 at 9. Plaintiffs' amended

21  complaint contains similar factual allegations as their original complaint, and courts

22  have likewise found that California elder financial abuse claims are preempted by

23  

---

24      [5] Defendant also argues that Plaintiff fails to allege proximate cause between any RICO
violation and a concrete financial injury to Plaintiffs. Def. Mot. 6–8. To make out a RICO claim,

25  Plaintiff must also plead that a defendant's violation was both the "but for" and proximate cause of
a concrete financial injury. *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1117 (9th Cir. 1999).

26  Defendant argues that even if Southland did have insider information from Wells Fargo, this was not
a proximate cause of Plaintiffs' injury, because "if not Southland Mortgage, than either Wells Fargo

27  or another third party would have purchased the property at the foreclosure sale" anyway. Def. Mot.
7. However, Plaintiffs allege that Defendants' collusion encouraged Wells Fargo to "fast track" the

28  foreclosure, implying that if it were not for the collusion between Defendants, the foreclosure of
Plaintiffs' property would not have occurred so precipitously, nor with alleged disregard of federal
regulations, with the result that Plaintiffs' home would not have been sold on November 6, 2015.

HOLA. *See, e.g.*, *Cosio v. Simental*, No. CV 08-6853PSGPLAX, 2009 WL 201827, at *5 (C.D. Cal. Jan. 27, 2009). Thus, the Court finds that amendment of the Amended Complaint to add a financial elder abuse claim would be futile, and thereby **DENIES** Plaintiffs' request for leave to amend in order to add a financial elder abuse claim.

However, the Court **GRANTS** Plaintiffs leave to amend their RICO claim in order to identify the specific predicate acts that form the basis of the alleged scheme of racketeering so as to cure the deficiencies identified in Part II.B of this Order. The Court cautions Plaintiffs that they are **NOT** permitted to add any additional claims to any second amended complaint.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant Wells Fargo Bank, N.A.'s Second Motion to Dismiss, ECF No. 18, is **DENIED** with respect to Plaintiffs' 12 C.F.R. §§ 1024.41(b) & (c) claims, and **GRANTED** with respect to Plaintiffs' RICO claim. Plaintiffs' RICO claim, 18 U.S.C. § 1961 et seq., is hereby **DISMISSED** without prejudice.

2. **Within thirty (30) days** of the issuance of this Order, Plaintiff must file either a second amended complaint or a notice of election not to file a second amended complaint. Defendant must file any response **within fourteen (14) days** after service of the amended pleading.

3. The hearing on this motion, currently set for April 29, 2016, is hereby **VACATED**.

**IT IS SO ORDERED.**

DATED:  April 28, 2016

HON. GONZALO P. CURIEL
United States District Judge