UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVERETT L. THOMAS, MARTHA A. THOMAS,<br><br>                                   Plaintiffs,<br>v.<br>WELLS FARGO BANK, N.A, WELLS FARGO BANK HOME MORTGAGE, BARRETT DAFFIN FRAPPIER & WEISS, LLP,<br><br>                                   Defendants. | Case No.: 3:15-cv-02344-GPC-JMA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 46]** |

    Before the Court is a motion for summary judgment filed by Defendant Wells Fargo Bank, N.A ("Wells Fargo"), erroneously sued as Wells Fargo Home Mortgage. ECF No. 46. The motion has been fully briefed. Plaintiffs Everett and Martha Thomas filed an opposition on July 13, 2017 and Defendant Wells Fargo filed a reply on July 25, 2017. Based upon a review of the moving papers, the applicable law, and for the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.

## FACTS

In 2007, Plaintiffs Everett and Martha Thomas procured a $695,000 loan from Defendant Wells Fargo's predecessor-in-interest World Savings Bank, FSB for real property located in Chula Visa, California.[1] The loan was memorialized in a promissory note and secured by a deed of trust against the property.

Two years later in 2009, Wells Fargo provided Plaintiffs with a loan modification agreement that reduced the existing principal balance of the loan by $145,000, from $724,000 to $579,000. Thereafter, between 2011 and 2013, Plaintiffs submitted a number of additional complete loan modification applications. Defendant Wells Fargo denied all of the applications.

By the beginning of January 2014, Plaintiffs were no longer able to make their loan payments. Consequently, they defaulted on the loan.

Contemporaneously and after having submitted a number of unsuccessful loan modification applications, Plaintiffs hired Nissim Sasson of American Capital Modification Specialists, Inc. to assist them with the loan modification process. With the help of Sasson, Plaintiffs submitted a complete loan modification application to Defendant in January 2014. Defendant reviewed the application, denied it, and sent Plaintiffs two letters, both dated January 27, 2014, informing them of the denial. Plaintiffs appealed the denial decision, but Defendant declined to change its decision. Defendant confirmed its denial of Plaintiffs' appeal in a letter dated March 24, 2014.

Plaintiffs submitted another complete loan modification application in May 2014. Defendant Wells Fargo reviewed the loan modification and denied it. On June 29, 2014, Defendant sent Plaintiffs two letters indicating that their application had yet again been denied. Plaintiffs appealed Defendant's denial, and Defendant yet again denied the appeal. Defendant sent a letter confirming the denial on July 24, 2014.

---

[1] The background section states the undisputed facts. *See* ECF No. 48-2.

About four months later, sometime in November 2014, Plaintiffs submitted yet another loan modification application. In the meantime, on November 12, 2014, the trustee under the deed of trust recorded a Notice of Default. Defendant denied the November 2014 application in two letters dated December 5, 2014. Plaintiffs submitted a new loan modification application in early 2015 as well. Defendant denied that application in two letters dated March 24, 2015.

The trustee recorded a notice of trustee's sale on June 12, 2015 and set a foreclosure sale for July 9, 2015. By the time the trustee's sale was recorded, Plaintiffs owed more under the terms of their loan than what the property was worth. The June 9, 2015 sale never took place because Plaintiffs filed for bankruptcy shortly before the sale. Ultimately, the bankruptcy proceeding was dismissed due to a failure to file any of the required paperwork. Plaintiffs do not dispute that they "filed for bankruptcy solely for the purpose of delay."

The foreclosure sale was rescheduled for September 10, 2015. On the day before the foreclosure was to take place, Plaintiffs filed another loan modification application. Defendant acknowledged receipt of the application in a letter dated September 9, 2015. The foreclosure sale was then postponed to November 6, 2015, at which time now-dismissed Defendant Southland purchased the property for $581,000. Plaintiffs, however, did not leave the property until April 2017.

**PROCEDURAL BACKGROUND**

On September 1, 2015, Plaintiffs, residents of California, brought suit against Defendant Wells Fargo, a national banking association with its main office located in South Dakota, in San Diego Superior Court. Notice of Removal 2-5, ECF No. 1. Plaintiffs alleged violations of (1) Cal. Civ. Code § 2923.7 and (2) Cal. Civ. Code § 2923.6, and (3) common law breach of contract. *Id.* at 6-9.

On October 16, 2015, Defendant removed the case to federal court on the basis of diversity jurisdiction. *Id.* at 2. On November 16, 2015, Plaintiffs filed an ex parte motion for a temporary restraining order ("TRO") to restrain Defendant from selling

Plaintiffs' home through a nonjudicial foreclosure sale, on the basis that such sale would be in violation of a September 9, 2015 temporary restraining order restraining the sale issued by the San Diego Superior Court. ECF No. 6 at 2-3. Defendant conceded that Plaintiffs' home had been sold, but argued that the sale was proper because the TRO had expired no later than 14 days after the case was removed pursuant to Fed. R. Civ. P. Rule 65(b)(2), and Plaintiff had not renewed it. ECF No. 8 at 3-5. At the November 20, 2015 hearing on Plaintiffs' TRO motion, this Court denied the motion, finding that the state court TRO was no longer in effect. ECF No. 11.

On January 14, 2016, the Court granted Defendant's first motion to dismiss. ECF No. 15. The Court found that Plaintiffs' state-law claims were preempted by the federal Home Owners' Loan Act. *Id.* at 9. Nonetheless, the Court granted Plaintiffs leave to amend in order to add a RICO claim to their suit. *Id.* at 10.

Plaintiffs filed the amended and now-operative complaint on February 10, 2016. ECF No. 16. In it, Plaintiffs allege that Defendant Wells Fargo violated 12 C.F.R. §§ 1024.41(b) & (c) by failing to respond to Plaintiffs' September 9, 2015 loan modification application. *Id.* ¶ 43. Plaintiff also alleges that Defendant Wells Fargo, along with Defendant Southland colluded with one another in order to sell Plaintiffs' home to Southland, thereby "wiping out $150,000 in equity which served to unjustly enrich Defendant Southland, and served as an inequitable forfeiture of Plaintiff[s]'[ ] equitable interest in the property." *Id.* ¶ 45 (emphases omitted). Such collusion, Plaintiffs allege, amounted to a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. (RICO). *Id.* ¶ 67.

Defendant Wells Fargo filed a motion to dismiss all three causes of action on February 24, 2016. ECF No. 18-1 at 2. On March 11, 2016, Defendant Southland moved the Court to join in the motions filed by its co-defendant, ECF No. 20 at 2, and the Court subsequently granted the motion, ECF No. 24. In the motion to dismiss, Defendant Wells Fargo argued that Plaintiffs had no standing to assert violations of 12 C.F.R. §§ 1024.41(b) and (c) because their September 9, 2015 request for loan modification was

duplicative. ECF No. 18 at 7-8. Specifically, Defendants argued that because 12 C.F.R. §§ 1024.41(i) only requires a loan servicer to "comply with the requirements of this section for a single complete loss mitigation application" and because Plaintiffs had already submitted a number of complete applications, Plaintiffs had no right to enforce the regulations against Defendants as to their September 9, 2015 application. *Id.*

On April 28, 2016, the Court denied Defendant Wells Fargo's motion to dismiss Plaintiffs' 12 C.F.R. §§ 1024.41(b) and (c) claims, but granted the motion as to Plaintiffs' RICO claim. ECF No. 23. The April 28, 2016 order specifically rejected Defendant Wells Fargo's contention that Plaintiffs could not enforce the relevant regulations because of duplicative requests under 12 C.F.R. §§ 1024.41(i). *Id.* at 6-10. In so doing, the Court emphasized that the facts in the complaint, when viewed in the light most favorable to Plaintiffs, suggested that Defendants had never considered a "complete application." *Id.* As such, the Court declined to hold that Defendants had already considered a "single complete loss mitigations application" in accordance with 12 C.F.R. §§ 1024.41(i) and, therefore, declined to hold that Defendants were no longer required to comply with the section's requirements. *Id.*

On October 12, 2016, Defendant Southland filed a motion for judgment on the pleadings alleging that Plaintiffs had failed to state a cause of action under 12 C.F.R. §§ 1024.41 as to Southland. ECF No. 34. The Court granted the motion on December 2, 2016 and dismissed Defendant Southland from the complaint. ECF No. 40. The instant motion followed after discovery took place.

## **LEGAL STANDARD**

Fed. R. Civ. P. 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

5

3:15-cv-02344-GPC-JMA

judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In making this determination, the court must "view[ ] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact. *Anderson*, 477 U.S. at 255.

## **DISCUSSION**

Defendant argues that the undisputed material facts demonstrate that it is entitled to judgment as a matter of law. Specifically, Defendant contends that summary judgment is warranted because (1) 12 C.F.R. § 1024.41 does not apply to repeat applications; (2) alternatively, 12 C.F.R. § 1024.41 does not apply because Plaintiffs did not file their

September 2015 loan modification application within the appropriate time period before the scheduled foreclosure sale; (3) alternatively, Wells Fargo did not violate 12 C.F.R. § 1024.41 because it acknowledged receipt of Plaintiff's September 2015 application within five business days; and (4) in the event that the Wells Fargo did violate 12 C.F.R. § 1024.41, Plaintiffs claim still fails because they have no evidence of damages. ECF No. 46-1. In response, Plaintiffs argue in conclusory fashion that summary judgment is inappropriate because "some of the 'undisputed' material facts cited by Defendant are in fact disputed or partially disputed" and because "Defendant has, through artful pleading, obfuscated the fact that several material facts are actually in issue . . . ." ECF No. 48-1.

Plaintiffs' opposition to Defendant's motion for summary judgment fails for a number of reasons, but chief among them is its failure to demonstrate that there is a genuine dispute of material fact as to the applicability of 12 C.F.R. § 1024.41 to Plaintiffs' September 2015 loan modification application. Defendant argues that there is no dispute that 12 C.F.R. § 1024.41 does not apply because Plaintiffs concede that they submitted multiple "complete" loan modification applications between 2011 and 2013, in January 2014, and in May 2014. *See* Pl.'s Reply to Def.'s Separate Statement of Undisputed Facts, ECF No. 48-2. Accordingly, Defendant argues, Wells Fargo already satisfied their obligation under 12 C.F.R. § 1024.41(i) to comply with the requirements of the section for a "single complete loss mitigation application."

The Consumer Financial Protection Bureau ("CFPB") promulgated 12 C.F.R § 1024.41 under the Real Estate Settlement Procedures Act, 12. U.S.C. § 2605. *See Brimm v. Wells Fargo Bank, N.A.*, — F. App'x — , 2017 WL 1628996, *2 (6th Cir. 2017). The regulation came into effect on January 10, 2014. *Id.* "The regulation requires mortgage servicers to make decisions on loan modification requests in a timely manner and prohibits servicers from foreclosing if a mortgagor submits a complete modification application more than 37 days before a scheduled sale." *Id.* (citing 12 C.F.R. § 1024.41(b), (c), (g)).

Section 1024.41, however, "does not require mortgage servicers to consider duplicative requests." *Id.* Rather, the regulation states that "A servicer is only required to comply with the requirements of this section for a single complete loss mitigation application for a borrower's mortgage loan account." 12 C.F.R. § 1024.41(i). The Consumer Financial Protection Bureau has explained its reasoning for limiting a loan servicer's obligations under the regulations as follows:

> The Bureau believes that it is appropriate to limit the requirements in § 1024.41 to a review of a single complete loss mitigation application. Specifically, the Bureau believes that a limitation on the loss mitigation procedures to a single complete loss mitigation application provides appropriate incentives for borrowers to submit all appropriate information in the application and allows servicers to dedicate resources to reviewing applications most capable of succeeding on loss mitigation options.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696-01, 10836 (Feb. 14, 2013).

As Plaintiffs concede, they submitted at least one complete loan modification application to Wells Fargo after Regulation X was promulgated, in May 2014, and Wells Fargo denied the application in due course. *See* ECF No. 48-2 at 3 ("Plaintiffs resubmitted another complete loan modification application in May 2014."); *id.* at 4 ("Wells Fargo determined that they did not qualify for a loan modification and sent two letters dated June 19, 2014 indicating that the application had been denied."). There is no dispute that Wells Fargo notified Plaintiffs of the denial of their application. There is also no dispute that both applications were "complete" for purposes of the regulation. In light of this, the Court concludes that Wells Fargo had no obligation to comply with the requirements of § 1024.41 for any subsequent complete loss mitigation application, including Plaintiffs' September 2015 application. *See Brimm*, — F. App'x —, 2017 WL 1628996 at *2 (concluding that Wells Fargo had no obligation to respond to any renewed loan modification request because Wells Fargo had already reviewed and denied a complete application).

8

3:15-cv-02344-GPC-JMA

In reaching this conclusion, the Court rejects Plaintiffs' argument that Defendant was nonetheless obligated to abide by the requirements of Regulation X because it had "accepted for consideration Plaintiffs' loss mitigation application." ECF No. 48-1 at 3. Not only does this argument make little sense in light of the plain language of Section 1024.41(i), but Plaintiffs have cited to no binding legal authority supporting their position. In fact, the one case that Plaintiffs cite in support of this position actually contradicts it. *See Coury v. Caliber Home Loans, Inc.*, 2016 WL 6962882, *4 (N.D. Cal. Nov. 29, 2016) ("Coury seems to suggest that his subsequent submissions of complete applications also required Caliber to respond under § 1024.41(c). . . . The regulation, however, does not obligate servicers to respond to multiple applications from a single borrower.").

The Court moreover notes that Plaintiffs have failed to produce any genuine issue of material fact demonstrating that their May 2014 loan modification application was otherwise incomplete. Defendant, on the other hand, has cited to multiple evidentiary submissions showing that the loan application sent to Defendant in May 2014 was a "complete" loan modification application. *See, e.g.*, Deposition of Nissim Sasson, 31:12-32:12 (Q: "Okay. Did at any point you have a conversation with somebody at Wells Fargo before the denial and say, "We've now received everything that we have; it's a complete application; we'll give you a review"? A: "Yes."). As such, and because there is no material dispute that Defendant reviewed and denied a complete loan modification application in May 2014, the Court concludes that the requirements of 12 C.F.R. § 1024.41(b) and (c) do not apply to Plaintiffs' subsequent loan modification application submitted in September 2015.

Accordingly, the Court concludes that Defendants are entitled to judgment as a matter of law on Plaintiffs' claims under 12 C.F.R. § 1024.41(b) and (c).

////

////

////

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED**.

**IT IT SO ORDERED.**

Dated: September 4, 2017

Hon. Gonzalo P. Curiel
United States District Judge